CORMAN, Executrix, Appellant, vs. LEX CONSTRUCTION COMPANY and another, Respondents.

*October 12, 1933—January 9, 1934.*

*W. G. Haddow* of Ellsworth, for the appellant.

For the respondents there was a brief by *White & White* of River Falls and *C. E. Warner* of Minneapolis, Minnesota, and oral argument by *Mr. Ferris M. White* and *Mr. Warner.*

The following opinion was ·filed November 7, 1933:

FRITZ, J.   Melvin W. Corman was injured on June 26, 1931, by being crushed underneath the descending skip of a paving machine which the Lex Construction Company was using in constructing a concrete highway for the state of Wisconsin.   Corman was employed by the state as an in-

spector to weigh and keep a record of cement as it was loaded from freight cars, at a railway depot, onto trucks, on which it was hauled to the roadway which was under construction. Shortly before the accident happened, Corman had weighed the cement for the last load required to complete the project, and he left the depot and went about a mile to where the paving machine was being operated on the public right of way. He had no duty to perform in connection with its operation, and had never seen it in operation. The skip was fastened at the front end of the paving machine for use in hoisting gravel and cement, which were dumped into it from trucks, from the surface of the right of way to a height of twenty-one feet, so that the material could be dumped from the skip into the upper part of the paving machine. The skip was raised and lowered by mechanical devices operated by an employee of the Lex Construction Company. He stood at some height on the right side of the machine, and by operating a lever put in a clutch to raise the skip. To lower the skip he released the clutch and applied a brake to control the descent of the skip. The end of the skip which was lowered was ten feet wide and eight feet long, and when lowered it extended ten feet from the front of the paving machine. From where the operator stood while releasing the clutch and applying the brake in lowering the skip, his view was such that he could not see beneath the skip after it had descended to a point eight feet above the ground. On the right side of the skip an iron pipe extended as a horizontal guard rail for eight and one-half feet from the front of the paving machine. On the left side of the skip there was a similar guard, but its length had been reduced to three feet ten inches because at its original length it was in the way in releasing a lever on the left side of the trucks to dump materials into the skip. Those dumping levers were released by an employee

of the Lex Construction Company, whose duty it also was to signal truck drivers to back their trucks up to the lowered skip so that, upon his releasing the dumping lever, the contents of the truck fell into the lowered end of the skip.

Just prior to his injury, Corman had been watching the operation of the paving machine, while he was standing ten to fifteen feet from the skip, at the middle of the left side of the machine, opposite to the operator of the clutch lever and the brake which controlled the raising and lowering of the skip. While the skip was in the raised position, twenty-one feet above the ground, Corman was talking with N. C. Miller, an employee of the Lex Construction Company, and as that employee turned and walked toward the rear of the machine, Corman turned and walked toward the front thereof. Thereafter nobody saw him until he was seen underneath the skip, which had been lowered by the operator of the clutch and brake to one foot above the ground. The operator had not seen Corman approaching the skip while he was lowering it in the usual manner before another truck was backed up toward it. The employee who attended to the dumping levers on the trucks had gone one hundred feet down the road to signal to a truck driver to back in for unloading. There is no material conflict in the evidence which establishes the foregoing facts.

The court found that the Lex Construction Company was negligent in failing to adequately guard the end and side of the working space under the skip, and also in lowering the skip at the time without signaling; and that that negligence was a proximate cause of Corman's injury. To those findings appellant does not take exception. However, she contends that the court erred in further finding that Corman failed to exercise ordinary care for his own safety; that such negligence on his part was a proximate cause of his injury and death; and that the negligence of the Lex Con-

struction Company, which was a proximate cause of Corman's injury and death, was not greater than the negligence of Corman.

Appellant also contends that the court erred in finding that Corman was a trespasser and not an employee, or at least a frequenter within the meaning of sub. (5) of sec. 101.01 of the safe-place statutes. However, whether Corman was an employee or a frequenter, on the one hand, or a trespasser, on the other hand, is, as the trial court rightly concluded, immaterial in view of the finding that negligence on Corman's part was a proximate cause of his injury and that the negligence of the Lex Construction Company, which was also a proximate cause of such injury, was not greater than Corman's negligence. Whether Corman was but a trespasser (to whom there would have been owing no duty except that of refraining from wilful and intentional injury or active negligence, *Frederick v. Great Northern R. Co.* 207 Wis. 234, 247, 240 N. W. 387, 241 N. W. 363) and therefore not entitled to the status of either an employee or a frequenter so far as the duty of others toward him was concerned, was of some consequence in determining the nature and extent of the duty owing to him by the Lex Construction Company, because, if he was an employee or frequenter within the meaning of sec. 101.01 (5), Stats., then under the rule recognized in *Frederick v. Great Northern R. Co., supra,* he was entitled to greater consideration for his safety than he would have been entitled to as a mere trespasser. But, as the court found that although Corman was neither an employee nor a frequenter, the Lex Construction Company was nevertheless guilty of negligence in relation to him, and that recovery for his injury must be denied because of his own contributory negligence, any error in the decision as to his status as an employee, frequenter, or trespasser is inconsequential. In either event, whatever his status was, it was Corman's duty to exercise

ordinary care for his own safety to the same extent; and unless the negligence of the Lex Construction Company which caused his injury was greater than his own, no right to recover for his injury arose.

Under the evidence we are not warranted in concluding that the court's finding as to Corman's negligence, and the extent and results thereof, in comparison to the negligence of the Lex Construction Company and the results thereof, are contrary to the clear preponderance of the evidence. Although the evidence may admit of differences of opinion, it was clearly within the province of the court to believe that Corman could and, in the exercise of ordinary care for his own safety, ought to have seen that the skip, which because of its size was certainly conspicuous, was being lowered again in connection with the operation of the paving machine, which was still functioning; and that in the absence of any necessity or occasion therefor he should not under the existing circumstances have entered voluntarily the space in which the skip was being raised and lowered by the employee, who operated the clutch and brake, and who had continued at the proper station for that purpose.

Likewise, under the evidence, the issue as to comparative negligence presented a question of fact, which, but for the waiver of a jury on the trial of this case, would have been a clear jury question. That is true under the evidence in this case regardless of whether and when a court can hold, as a matter of law, that the negligence of a plaintiff was or was not as great as that of a defendant. That problem was considered in *Brown v. Haertel*, 210 Wis. 345, 351, 244 N. W. 630. In measuring the extent and result of the negligence of the Lex Construction Company, and comparing them with the extent and result of plaintiff's negligence, the court in concluding that that defendant's negligence was no greater than plaintiff's in causing the injury may well have been influenced by such circumstances as that necessity

for signaling before lowering the skip was diminished materially because the operator could see underneath it until it descended to eight feet above the ground and that, while it was descending to that point, no one was entering the space beneath the skip; that, on the other hand, during all of its descent from twenty-one feet above the ground the fact that the skip was descending was readily observable by Corman or any one else who was about to walk underneath it; and that the left-side guard rail had been shortened to avoid repeatedly endangering the safety of the employee engaged in releasing the dumping lever on trucks when material was dumped into the skip.

As the court's findings must be permitted to stand, and they support the conclusions of law and judgment dismissing the complaint, that judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on January 9, 1934.